**FILED**

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN THE STATE CUSTODY

MAR 2 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Name   PLAZA        JESSE       M.
     (Last)       (First)    (Initial)

Prisoner Number   H-12371

Institutional Address   CIF CENTRAL ZW-302U

P.O. BOX 689 SOLEDAD, CA. 93960-0689

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
JESSE M. PLAZA

        **vs.**

BEN CURRY (WARDEN)

(Enter the full name of plaintiff)
CORRECTIONAL TRAINING

FACILITY SOLEDAD, CA. 93960-0689

(Enter the full name of respondent)

CV No. 08      1589
(To be provided by the clerk of court)
PETITION FOR WRIT
OF HABEAS CORPUS

**JF**

**(PR)**

PET. FOR WRIT OF HAB. CORPUS              -1-

<u>Who to Name as Respondent</u>

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack was entered.

A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1. What sentence are you challenging in this petition?

(a) Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

LOS ANGELES SUPERIOR COURT _____ NORWALK CA. _____

Court                                    Location

(b) Case number, if known ___VA004108_____

(c) Date and terms of sentence ___9-28-91___    25 YEARS TO LIFE_____

(d) Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.)    Yes __X__    No _____

Where?

Name of Institution: ___CIF  CENTRAL  P.O. BOX 689_____

Address: ___ZW 302U  SOLEDAD,  CA.  93960-0689_____

2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

P.C. 187 _____

_____

_____

PET. FOR WRIT OF HAB. CORPUS          - 2 -

3. Did you have any of the following?

Arraignment:                                    Yes __X__    No _____

Preliminary Hearing:                            Yes __X__    No _____

Motion to Suppress:           unknown          Yes _____    No _____

4. How did you plead?

Guilty _____    Not Guilty __X__    Nolo Contendere _____

Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

Jury __X__    Judge alone_____    Judge alone on a transcript _____

6. Did you testify at your trial?                 Yes __X__    No _____

7. Did you have an attorney at the following proceedings:

   (a)    Arraignment                       Yes __X__    No _____

   (b)    Preliminary hearing              Yes __X__    No _____

   (c)    Time of plea                     Yes __X__    No _____

   (d)    Trial                            Yes __X__    No _____

   (e)    Sentencing                       Yes __X__    No _____

   (f)    Appeal                           Yes __X__    No _____

   (g)    Other post-conviction proceeding  Yes _____    No __X__

8. Did you appeal your conviction?                 Yes __X__    No _____

   (a)    If you did, to what court(s) did you appeal?

       Court of Appeal                  Yes __X__    No _____

       Year: __1991__    Result: __DENIED_____

       Supreme Court of California      Yes __X__    No _____

       Year: __unknown__    Result: __DENIED_____

       Any other court                  Yes _____    No __X__

       Year: __none__    Result:_____

   (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS          - 3 -

1

petition?                                          Yes _____    No_ X _

(c)  Was there an opinion?                Yes_ X _    No_____

2

3

(d)  Did you seek permission to file a late appeal under Rule 31(a)?

4                                                    Yes _____    No_ X _

5        If you did, give the name of the court and the result:

6        _____n/a_____

7        _____

8  9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9  this conviction in any court, state or federal?        Yes _____    No_ X _

10       [Note:  If you previously filed a petition for a writ of habeas corpus in federal court that

11  challenged the same conviction you are challenging now and if that petition was denied or dismissed

12  with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13  for an order authorizing the district court to consider this petition.  You may not file a second or

14  subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit.  28

15  U.S.C. §§ 2244(b).]

16       (a)  If you sought relief in any proceeding other than an appeal, answer the following

17            questions for each proceeding.  Attach extra paper if you need more space.

18       I.   Name of Court: ____n/a_____

19            Type of Proceeding: _____

20            Grounds raised (Be brief but specific):

21            a._____

22            b._____

23            c._____

24            d._____

25            Result: _____Date of Result:_____

26       II.  Name of Court: ____n/a_____

27            Type of Proceeding: _____

28            Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS          - 4 -

1          a._____

2          b _____

3          c _____

4          d._____

5          Result: _____Date of Result:_____

6   III.  Name of Court: _____ n/a _____

7          Type of Proceeding: _____

8          Grounds raised (Be brief but specific):

9          a._____

10         b._____

11         c._____

12         d._____

13         Result: _____Date of Result:_____

14  IV.  Name of Court: _____ n/a _____

15         Type of Proceeding: _____

16         Grounds raised (Be brief but specific):

17         a._____

18         b._____

19         c._____

20         d._____

21         Result: _____Date of Result:_____

22  (b)  Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                     Yes \_\_\_\_   No \_x\_\_

24         Name and location of court: _____

25  **B. GROUNDS FOR RELIEF**

26        State briefly every reason that you believe you are being confined unlawfully. Give facts to

27  support each claim. For example, what legal right or privilege were you denied? What happened?

28  Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS     - 5 -

1  need more space. Answer the same questions for each claim.

2      [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5      Claim One:___SEE ATTACHED HABEAS PETITION_____

6  _____

7      Supporting Facts:_____

8  _____

9  _____

10 _____

11     Claim Two:__SEE ATTACHED HABEAS PETITION_____

12 _____

13     Supporting Facts:_____

14 _____

15 _____

16 _____

17     Claim Three:_SEE ATTACHED HABEAS PETITION_____

18 _____

19     Supporting Facts:_____

20 _____

21 _____

22 _____

23     If any of these grounds was not previously presented to any other court, state briefly which

24 grounds were not presented and why:

25 _____NONE_____

26 _____

27 _____

28 _____

PET. FOR WRIT OF HAB. CORPUS    - 6 -

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2  are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3  of these cases:

4    SEE ATTACHED HABEAS PETITION

5

6

7  Do you have an attorney for this petition?                    Yes_____      No_X_____

8  If you do, give the name and address of your attorney:

9

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on  _3-16-08_                        _Jesse M. Plza_

14              Date                                Signature of Petitioner

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

Comes now, Jesse Plaza, petitioner in pro se, and hereby petitions this honorable court for a writ of habeas corpus on petitioner's parole suitability hearing, held on May 1, 2006.

Petitioner is in custody of the California Department of Corrections and rehabilitation, at the correctional training facility in Soledad, California serving a term of 25 years to life following his conviction in 1991 in Los Angeles County Superior Court case no VA004108. Wherein petitioner was convicted of first degree murder in violation of penal code section 187. Petitioner was received by the Department of Corrections on October 9, 1991, when his life term commenced. This petition is intended to give meaning to petitioner, Jesse Plaza, (hereafter "Petitioner"), sentence of 25 years to life for "first degree murder". On May 1 2006, petitioner went before the Board of Parole Hearings for his initial parole. (Petitioner's minimum eligible parole date is 1-25-07) for a finding of suitability, and the setting of his term uniformly. Petitioner submits that the Board of Parole Hearings (hereafter "Board") regulations, California code of regulations, Title 15, section 2402(a) **Demands** that the Board set a release date unless petitioner currently presents a unreasonable risk of danger to public saftey. Petitioner submits that there is nothing in the Board's decision indicating the basis for that belief, which petitioner discusses and proves infra.

i

STATE AND FEDERAL CLAIM NUMBER ONE
CALIFORNIA PENAL CODE §3041(a)(b) CREATES A PROTECTABLE
LIBERTY INTEREST AT A PAROLE SUITABILITY HEARING, AND A
"REASONABLE" EXPECTATION OF A RELEASE DATE. THE COMMANDING
WORD "SHALL" CLEARLY ESTABLISHES THIS EXPECTATION.

Under California law, a convicted person sentenced to a term of 15/25 years to life shall be released on parole unless his release would pose an unreasonable risk to public safety or unreasonable risk to public safety or unreasonable risk to society if released from prison. Cal. P.C. §3041(a)(b); Cal. Code of regs., Title 15, 2400-2411.

### DUE PROCESS IN THE PAROLE CONTEXT

The Fifth and Fourteenth Amendments prohibit the government from depriving an inmate of life, liberty, or property without due process of law. United States Constitutional Amendments, V, XIV.

It is now settled that California parole scheme, codified in California Penal Code section §3041, vests all "prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of parole release date, a liberty interest that is protected by the procedural safeguards of the due process Clause." Irons v. Carey, 479 F.3d 658, 662 (9th cir. 2007) (citing Sass v. California Board of Prison Terms, 461 F3d 1123, 1128 (9th cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th cir. 2003); McQuillon v. Duncan, 306 F.3d 895, 903 (9th cir. 2002).

Under the "clearly established" framework of Greenholtz and Allen, we hold that California's parole scheme gives rise to a cognizable liberty interest on parole. The scheme "creates a presumption that parole release will be granted, unless the statutorily defined determinations are made. Allen, 482 at 378 (quoting Greenholtz, 442 U.S. at 12). In, In re Deluna, 126 Cal. App.4th 585, 24 Cal.Rptr.3d 643 (2005), held that under Rosenkrantz and McQuillon, parole applicants continue to have a "liberty interest" in parole release.

1

STATE AND FEDERAL CLAIM NUMBER TWO
THE BOARD VIOLATED PETITIONER''S DUE PROCESS
AND EQUAL PROTECTION RIGHTS UNDER THE FIFTH
AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION
ARTICLE 1, SEC, 7(a), BY MIS-APPLYING PAROLE
SUITABILITY CRITERIA, AND, APPLYING ARTITRARY
AND CAPRCIOUS EVIDENTIARY SUPPORT TO DENY PAROLE.

On May 1, 2006, the Board conducted petitioner's Initial Parole Consideration
Hearing. The Board found petitioner unsuitable and denied parole for a period of two
years. (Exhibit "A" 89-93) In support of its findings that the petitioner currently
posed an unreasonable risk to society, the Board found that the "offense was carried
out in an especially cruel and callous manner", "carried out in a calculated manner",
"The motive for the crime was very trivial in that it was a gang related shooting",
and the unsupported conclusion that the petitioner has refused to take responsibility
for his actions. Petitioner was, however, commended for programming extremely well,
commended for remaining disciplinary free, obtaining a positive psychological
evaluation, participating in AA and NA, completing two vocations and securing positive
parole plans. (Exhibit "A", p. 89-93). Despite all the evidence supporting a granting
of parole, the board found petitioner unsuitable for grant of parole based on the
commitment offense, including and unsupported conclusion that petitioner tries to
minimize his responsibility.


Petitioner alleges that there was no evidence to support the Board's finding that
he poses a current unreasonable risk if released. In fact, all current, reliable
evidence presented to the Board shows that petitioner poses no risk if released,
petitioner futher alleges that the Board violated petitioner's statutory rights and
his Fifth and Fourteenth Amendments (due process rights), when it refused to grant
petitioner a parole date despite evidence supporting a finding that petitioner posed
no unreasonable risk of harm. Futhermore, his continued confinement constitutes cruel
and unusual punishment in violation of the Eigth and Fourteenth Amendments of the
United States Constitution.

2

1       Petitioner also submits the Board spoke in meaningless generalities and never

2  specified the exact nature of petitioner's current character that would make

3  petitioner a danger to society. And by **not** doing so, the Board violated Penal Code

4  §3041, which dictates that the Board **shall normally** set a parole release date at

5  petitioner's Initial Hearing. Petitioner, further submits that the issue raised in

6  this petition are of Constitutional dimension, questioning the legality of

7  petitioner's confinement. An indeterminately sentenced prisoner must be paroled when

8  there is no **evidence** that petitioner is a **current** or **unreasonable** risk to society. The

9  California Supreme Court has recognized that parole applicants' posses a "protected

10  liberty interest under the California Due Process Clause". (In re Rosenkrantz, (2002)

11  29 Cal.4th 616, 660; cf. McQuillon v. Duncan (9th Cir. 2002) 306 F.3d 895, 901. It is

12  well established that Courts may review the Board's parole decisions under a highly

13  deferential standard of review, and must reverse those decisions if there is not **"some**

14  **evidence"** in the record to support them. (Rosenkrantz, supra 29 Cal.4th at 667; In re

15  Smith (2003) 109 Cal.app.4th 489. Petitioner submits there is **no evidence** that

16  petitioner is **currently** a threat to public safety.

17

18      PETITIONER NOW SUBMITS THE FOLLOWING POINTS AND AUTHORITIES IN SUPPORT OF

19  THIS PETITION FOR WRIT OF HABEAS CORPUS

20

21                   **MEMORANDUM OF POINTS AND AUTHORITIES**

22

23      Under the Board's regulations, pursuant to Penal Code §3041(b), a prisoner may be

24  found unsuitable for parole if the Board determines that the offense or past offense

25  and its timing is of such gravity that a longer period of incarceration is required in

26  the interest of public safety. The determination is made based on the standards set

27  fourth by the Board's regulations. The principle guidelines in making the

28  determination is Cal. Code Regs. §2071 (c)-(1-6):

(1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

(A) Multiple victims were attacked, injured, or killed in the same or separte incidents.

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.

(C) The victim was abused, defiled or mutilated during or after the offense.

(D) The offense was carried out in a manner which demonstrated an exceptionally callous disregard for human suffering.

(E) The motive of the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occassions inflicted or attempted to inflict serious injury on a victim, particulary if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental realted to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Circumstances (1), (2), and (4) reasonably reflect the sole specified and authorized statutory exception to setting parole release dates, for the current or past convicted offense(s).  Factor (E) of circumstances (1), however, pertaining to the motive of the crime as being inexplicable, although typically stated by the Board as a factor for denying parole, is a rare circumstance, as there is almost always, as here an explanation as to why the offense occurred. Whether the motive was trivial is

4

1    another matter. As one court noted:

2

3              "The epistemological and ethical problems involved in

4              the ascertainment and evaluation of motive are among the reasons the law

5              has sought to avoid the subject.  As one

6              authority has stated, "[hardly any part of Penal Law is more settled

7              than that motive is irrelevent.]"  (Hall, General Principles of Criminal

8              Law (2d ed. 1960) at p. 88; see also Husak, **Motive and Criminal**

9              **Liability (1989) vol. 8, No. 1, Crim. Justice Ethics 3.)"**

10

11         **The court futher expalined:**

12

13              "The offense committed by most prisoners serving life

14              sentences is, of course, murder. Given the high value

15              our society places upon life, there is no motive for unlawfully taking

16              the life of another human being that could not be deemed "trivial". The

17              Legislature has foreclosed that approach, however, by declaring that

18              murderers with life sentences must "normally" be given release dates as

19              they approach their minimum eligible release dates. (Penal Code §3041,

20              subd. (a)." (**In re Scott**, 119 CalApp.4th 871, 892-893.)

21

22         It is therefore questionable whether the factor has any evidentiary value in this

23    case. If the motive was indeed inexplicable "A person whose motive for a criminal act

24    can not be explained or is unintelligible is therefore unusually unpredictable and

25    dangerous." (Id.) Such is not the case here.

26         The primary circumstances and factors considered to make the determination,

27    §2402(d)(1)(B) and (D), have been explained by the courts. To qualify for the

28    authorized exception, an offense must be exceptionally egregious. The court of appeal

                                            5

characterized this as follows:

> "**In re Van Houten** (2004) 116 Cal.App.4th 339 [10 Cal.Rptr.3rd 406]
> illustrates the sort of gratuitous cruelty required. The prisoner in
> that case was involved in multiple stabbings of a woman with a knife and
> bayonet, while she was dying, the victim was made aware her husband was
> suffering a similarly gruesome fate. As stated by the court, "[t]hese
> acts of cruelty far exceeded the minimum necessary to stab a victim to
> death." (Id. at p. 351) Other examples of aggravated conduct reflecting
> an "exceptionally callous disregard for human suffering," are set forth
> in Board regualtions relating to the matrix used to set base terms for
> life prisoners (§2403, subd. (b)); namely, "torture," as where the
> "[v]ictim was subjected to the prolonged infliction of physical pain
> through the use of non-deadly force prior to act resulting in death,"
> and "severe trauma." As where "[death resulted from severe trauma
> inflicted with deadly intensity; e.g., beating, clubbing, stabbing,
> strangulation, suffocation, burning, multiple wounds inflicted with a
> weapon not resulting in immediate death or actions calculated to induce
> terror in the victim." (Ibid.) (I <u>In re Scott</u>, supra, 119 Cal.App.4th
> 871, 892.)

In this case there is no evidence of gratuitous cruelty or torture such as
described in the foregoing.  Moreover even in such cases, involving those exceptional
factors, the Board's regulations and suggested terms indicate parole suitability after
serving the indicated base terms.

Circumstances (3) of th unsuitability  factors, "Unstable Social History" appears
to be related to the commission of violent past offenses and gravity thereof. It is
not a factor in this case.

6

1    Circumstance (5), "Psychological Factors. The prisoner has a lengthy history of
2    severe mental problems related to the offense." is not applicable in this case, and
3    the Psychological Report does not indicate any such assessment.

4    Circumstance (6), "Institutional Behavior. The prisoner has engaged in serious
5    misconduct like that which may result in recission proceedings as is enumerated in
6    cal. Regs., tit. 15, §2451, or more properly, be punished by the provisions of Cal.
7    Code Regs., tit. 15, §2410, which provides for statutory "suitability" provisions
8    which specify only the gravity of the current or past offense to deny parole.

9    This "circumstance" is often relied upon by the Board to deny parole to
10   indeterminately sentenced prisoners repeatedly and for the years at a time. Yet
11   determinately sentenced prisoners might suffer only the loss of a few months of
12   credit, once, for the same misconduct, which they can even get restored. As such, the
13   Board's determinations that rely on such circumstances to deny parole, particularly
14   beyond the indicated matrix base terms, is unauthorized by Penal Code §3041, is
15   unfair, unreasonable and constitutes unequal punishment for the same conduct. A
16   blatant violation of petitioner's due process rights protected by the Fifth and
17   Fourteenth Amendments of the United States Constitution.

18
19                    **RELIANCE ON THE COMMITMENT OFFENSE TO DENY PAROLE AT**
                      **ALL INITIAL HEARINGS AND ALMOST ALL SUBSEQUENT HEARINGS**
20                    **AS INCONSISTENT WITH STATUTORY LANGUAGE AND CONTRARY TO**
                      **SUPREME COURT AUTHORITY**
21
22   The Board's reliance on the commitment offense to deny parole at all initial
23   hearings  and  almost  all  subsequent  hearings  fails  to  give  effect  to  the
24   statutory minimum terms despite Penal Code §3041 language that parole shall normally
25   be granted at the initial hearing. The Board promulgated regulations pursuant to Penal
26   Code §3041(a) which include standardized gravity matrices, but routinely denies parole
27   for the same circumstances and factors specifying appropriate terms. (See Cal. Code
28   Regs., tit. 15 §2400 et seq., footnotes citing implementation authority.)

7

Although it is presumed that the Board performs its duties lawfully, it is hardly debatable that the Board does not "normally" set parole release dates, as a matter of policy, where there is no substantial evidence to support the decision. See, for example, **In re Ernest Smith**, (2003) 114 Cal.App.4th 343, to name a few published cases. Because of the minimal "evidence" required under the "some evidence" standard, most of the denials and reversals of parole withstand court challenges. Releases on parole presumed by statutory language gives rise to a substancial right, but has been disregarded. The great majority of indeterminately sentenced prisoners have been repeatedly denied parole, but would have been released long ago under reasonable administration of the statutes and regulations.

> "The Court has an obligation, however, to look beyond the facial validity of a statue that is subject to possible unconstitutional administration since a "law though 'fair on its face and impartial in appearance' may be open to serious abuses in administration and courts may be imposed upon if the substantial rights of the persons charged are not adequately safeguarded at every stage of the proceedings." <u>Minnesota v. Probate Court</u>, (1940) 309 U.S. 270, 277.

Although the most recent interpretation of the statute at issue now holds that proportionality or comparison of like offenses is not required i.e., In re Dannenberg, (2005) 34 Cal.4th 1061, the Ninth Cirruit has previously stated:

> "While the interpretation gloss on the statute may bind this court as a matter of statutory construction, we are not, however, similarly bound as to the <u>constitutional effect</u> of the construction." <u>McSherry</u>, 880 F.2d at 1053" (<u>Aponte v. Gomez</u>, 993 F.2d 705 (9th Cir. 1993) (emphasis added)

8

1    This most recent interprtation of the statutes is inconsistent with decisions and
2  history leading up to the changes in the parole statutes, which prior decisions
3  recognized, as previously discussed:

5          "In contrast, by altering the statutory scheme and enacting the DSL, the
6          Legislature recited specifically that it "finds and declares that the
7          purpose of imprisonment for the crime is punishment." (Penal Code §1170,
8          sbd. (a)(1); all subsequent statutory refrences are to this code.) The
9          new law provides that an inmate's "release date shall be set in a manner
10         that will provide uniform terms for offenses of similar gravity and
11         magnitude in respect to their threat to the public, and that will comply
12         with the sentencing rules that the judicial council may issue and any
13         sentencing information relevant to the setting of parole release dates.
14         **The Board shall establish criteria for the setting of parole release
15         dates** and so doing shall consider the number of victims of the crime for
16         which the prisoner is sentenced and other factors in mitigation and
17         aggravation of the crime." (§3041, subd. (a), italics added.) The
18         present parole guidelines were promulgated pursuant to the new act,
19         Thus, the guidelines are not mere administrative responses to the
20         Board's internal shifting dicretion but rather reflect basic legislative
21         alterations in the underlying parole scheme." (In re Stanworth, (1982)
22         33 Cal.3d 176, 182.) (Underlining emphasis added.)

24    Clearly, the interpretation of the law shortly after it was changed was that the
25  Board's discretion was limited by the legislative alterations and guidelines. The
26  changes were clearly intended to place limits on the Board's discretion.

28          That, the Montana statute places significant limits on the Board's

discretion is further demonstrated by its replacement of an earlier statute which allowed absolute discretion..." **Board of pardons v. Allen**, 482 U.S. 369.

Like with Montana statute, in California the former Penal Code §3041 was completely changed, mandating the penal Code §3041 was completely changed, mandating the establishment of criteria for the normal setting of parole dates. Furthermore, Penal Code §3041(b) clearly spells out why the Board may require an extended period of incarceration. Because the Governor is bound by the same standards as the Board, the same would apply to the Governor. The current interpretive gloss on the parole and related statutes reverts plain statutory intent to the previous parole scheme by judicial omission of part of the whole, and violates principles of statutory construction, offending due process and ex post facto law.

### THE "SOME EVIDENCE" STANDARD MUST "TEND LOGICALLY", AND BY "REASONABLE INFERENCE" TO ESTABLISH A FACT RELEVANT TO PETITIONER'S SUITABILITY FOR PAROLE.

Petitioner, denies the "some evidence" standard used by the Board satisfied the requirements under both State and Federal due process. To satisfy the "some evidence" standard of Judicial Review of the Board's. Rosenkrantz, 29 Cal.4th at 677; Hill, supra, 427 U.S. at 456. However, the "some evidence" standard applies to evidenciary and is not a substitute for other due process requirements, Edward v. Balisok, (1977) 520 U.S. 641, 648, such as the Board's own preponderance of material and relevant evidence. (See Cal.Code of Regulations, tit 15, section 2000 (50)(63)(91). Thus, to determine whether the Board has fulfilled it's minimal due process procedural requirements, a reviewing Court looks not first at the decision, but the process in which it arrived at that decision. Balisok, supra, Ibid.

Here the Board continues to interpret the "some evidence" standard illegally. The

10

1   Board's decision in this case failed to point to evidence demonstrating that

2   petitioner **currently** presents an unreasonable risk of danger to society-the ultimate

3   question in determining petitioner's suitablility for parole (CCR, tit. 15, §2403,

4   subd. (a) For this reason, the evidence underlying the Board's decision does not tend

5   logically and by reasonable inference, to establish a fact relevant to the inmate's

6   suitability for parole. (Morrall, supra, 102 Cal.App.4th at pp. 298-299). The

7   discretion of the Board to determine parole suitability, although broad, is not

8   absolute, and the Board's decisions must be supported by "some evidence" (In re

9   Powell, (1988) 45 Cal.3d 894, 902-904; see also Terhune v. Superior Court (1998) 65

10   Cal.App.4th 864, 872-873; In re Minnis (1972) 7 Cal.3d 639, 646-647.

11       The United States Supreme Court has made it clear that the "some evidence"

12   standard discussed in Superintendent v. Hill (1985) 472 U.S. 445, is only one aspect

13   of judicial review for compliance with minimum standards of due process. The

14   California Legislature has given the Board guidelines to follow in evaluating a

15   parolee's eligibility for parole, mandating that the Board "shall normally" set a

16   parole release date... "in manner that will provide "uniform terms" for offenses of

17   similar gravity and magnitude in respect to their threat to the public"...(Id.,

18   quoting Penal Code §3041, subd. (a).) The Board is required to "establish criteria

19   for the setting of parole release dates." (Ibid.) However, the Board lacks discretion

20   to promulgate regulations that are inconsistent with governing statutes, and the

21   judicial branch has the final word on questions of legal interpretation." (Id.,

22   citing **Terhune v. Superior Court**, supra, 65 Cal.App.4th 864, 873)(emphasis added).

23       Petitioner asserts that the "some evidence" standard is being applied arbitrarily

24   by the reviewing Court's in the State of California. The Courts of California, both

25   State and Federal, seem to have settled in for the "some evidence" standard of

26   Judicial Review. (See, e.g., McQuillon v. Duncan, 306 F.3d 895 (9th cir. 2002), and

27   in In re Rosenkrantz, 29 Cal.4th 616 (2002). Without taking into consideration the

28   "substantial evidence" standard which is required by reviewing courts **Consolidated**

11

1  | Edison Co. v. NLRB, 305 U.S. 197 (1939) (See page 9)

2  |     The "some evidence" standard derives from the United States Supreme Court decision

3  | in Superintendent v. Hill, 472 U.S. 445; 105 S.Ct. 276 (1985), and is expressly a

4  | standard of "Judicail Review" for reviewing Court's, not the Board's standard.

5  |     The first California decision applying the "some evidence" standard of Hill was in

6  | the case of In re Powell, 45 Cal.3d 894 (1988). The Powell case was one where the

7  | Board of Prison Terms rescinded a parole grant based on a psychological report. In his

8  | petition, **Powell** argued for the "independant judgement" standard to the facts before

9  | the Board, or alternatively, the "substantial evidence" test. The people argued for

10 | the deferential "some evidence" test. **Powell** argued for the independant judgement test

11 | analogizing habeas corpus proceedings to administrative orders or decisions; in some

12 | cases it applies the independent judgement test while in other circumstances the

13 | substantial evidence test. If the former, and abuse of discretion is established when

14 | the court, exercising its independent judgement determines the administrative findings

15 | are not supported by the weight of the evidence. If the latter, the court must accept

16 | all evidence favorable to the Respondent as true and disregard any unfavorable

17 | evidence, if the evidence so viewed is sufficient as a matter of law, the order or

18 | decision must be affirmed. In rejecting Powell's argument, the court held that

19 | standard only applies when an administrative decision effects a vested right. This is

20 | a pivotal point. The Powell Court determined that "a prison inmate has no vested right

21 | in his prospective liberty on a parole release date". (id. at 903). It cited to

22 | pre-1977 section §3041; and (2) the California Supreme Court had not defined post-1977

23 | section §3041, as having vested a liberty interest in a parole release date, as it did

24 | later in the **Rosenkrantz** decision 29 Cal.4th 616 (2002), following on the heels of

25 | McQuillon v. Duncan 306 F.3d 895, 901-903 (9th cir. 2002), which interpreted Section

26 | §3041 as creating an "expectancy of release" that was a cognizable liberty interest

27 | protected by Federal due process. Thus, the Powell Court was wrong about whether a

28 | vested right was involved, and its decision to apply the "some evidence" standard

1  instead of the "in dependent judgement test" or "substantial evidence" was also wrong

2  because it was based on an incorrect interpretation of law.

3      Yet, the California Supreme Court in the Rosenkrantz case, 29 Cal.4th 616, applied

4  the "some evidence" standard of Superintendent v. Hill, 472 U.S. 445 (1985), in such

5  language as to confuse the lower Courts as to its specific purpose. i.e., the standard

6  of judicial review. It carried forward the "some evidence" standard originally applied

7  in In re Powell, 45 Cal.3d 894 (1988). The Rosenkrantz Court did not make clear that

8  the "some evidence" standard was not a standard applied by the Board itself as a

9  standard of proof in its deliberations. It appears that the ommission by the

10 Rosenkrantz Court of any articulation of what the Board's standard of evidence would

11 be as a critical component to the deliberative process of weighing and balancing of

12 evidence, has resulted in the Board not applying thier own preponderance of relevant

13 and material evidence standard (CCR, tit. 15 Div. 2, Section 2000; (50) Good cause

14 (63) material Evidence (91) Relevant Evidence), thereby rending every decision to

15 grant or deny parole completely standardless, and thus arbitrary and capricious.

16

17     Typically in California, the judicial standard of review of the ultimate decision

18 of the Board of Parole Hearings denying parole to a prisoner has been the "some

19 evidence" standard. In re Dannenberg (2005) 34 Cal. 4th 1061; In re Ramirez (2001) 94

20 Cal.App.4th 594, 564; **In re Rosenkrantz** [Rosenkrantz V] (2002) 29 Cal.4th 565, 616.

21 Although both Rosenkrantz, and Dannenberg thus affirmed the importance of judicial

22 review of the Board decisions, the decisions provide less than clear guidance as to

23 the proper application of the "some evidence" standard articulated in both decisions.

24 Of particular concern is the Dannenberg Court's brief deiscussion in dicta of the

25 "commitment offense" factor, which can improperly be read as granting to the Board the

26 ability to deny parole on the basis of almost any fact imaginable. As a result, there

27 is a real risk the State will interpret the standard to assert, de facto, the power it

28 has been expressly denied; effective immunity from meaningful judicial review of

13

1    parole decision. It should be recognized, however, that several courts are struggling

2    to determine exactly how this standard applies. While other Court's (post Dannenberg

3    and Rosenkrantz) has held that the "some evidence" standard must apply to **current**

4    **dangerousness. While interpreting this standard the california Court of Appeals,**

5    **Second Appellate District in the case of** In re Wen Lee, **(Oct. 17, 2006, B188831)(2006**

6    **DJDAR 13961) the court held**

7                  ...We conclude, however, that the Governor erred. The test is not

8                  whether some evidence supports the reasons the Governor cites for

9                  denying parole, but whether some evidence indicates a parolee's release

10                 unreasonably endangers public safety. (Cal.Code Regs., tit 15, §2402,

11                 subd. (a) [parole denied if prisoner "will pose an unreasonable risk of

12                 danger to society if released from prison]; see In re Scott (2005) 133

13                 Cal.App.4th 573, 595 ["The commitment offense can negate suitability

14                 [for parole] only if circumstances of the crime ... rationally indicate

15                 that the offender will present an unreasonable public safety risk if

16                 released from prison"] but see In re Lowe (2005) 130 Cal.App.4th 1405

17                 [suggested "some evidence" applies to the factors, not dangerousness].

18                 Some evidence of the existence of a particular factor does not

19                 necessarily equate to some evidence the parolee's release unreasonably

20                 endangers public safety.

21

22    In the case of In re Elkins, (Oct. 31, 2006, A111925) the Court of Appeals, First

23    Appellate District, held that;

24

25                  ..."The 'some evidence' standard is extremely deferential and reasonably

26                  cannot be compared to the standard of review involved in ... considering

27                  whether substantial evidence supports the findings" Nevertheless, it

28                  requires "some indicia of reliability" (**Scott II, supra,** 133 Cal.App.4th

                                              14

and "may be understood as meaning some rational basis in fact" (Scott
II, at P. 590, fn. 6).

One thing is for certain, even if mere "some evidence" standard is to apply in
this review, that standard is only a vehicle for the Court's review of the Board's
decision, not astandard for the Board itself to apply. The findings to support that
initial decision by the Board to deny parole, however, must be that the record
indicates the petitioner, poses a "current" danger to the public. That finding can not
be based on such flimsy evidence as to render it mere whim or aprized. (See In re
Ramirez, supra, at 564; See also In re Powell, (1988). To the contrary, as set forth
herein, the Board's decision must be made under the **preponderance of evidence
standard.** (Cal.Code of Reg., tit 15, Div. 2, section 2000 (50) Good Cause).

Petitioner denies the "some evidence" standard used by the Board satisfied the
requirements under both Stae and Federal due process. Petitioner asserts reliance on
the commitment offense does not satisfy the "some evidence" standard. There is no
question that under Rosenkrantz and Dannenberg the statutory "commitment offense"
factor is relevant, and that it may at times be enough to deny parole on its own,
neither Rosenkrantz nor Dannenberg stands for the principle that the commitment
offense is always enough by itself. In fact, both cases affirmatively state that
relience on the commitment offense alone might, in some circumstances, rise to the
level of a due process violation. That conclusion is consisitant with the concern
raised by the Ninth Circuit in Biggs v. Terhune, that the reliance on an ever-frozen,
unchanging factor-such as the commitment offense-in denying parole may in certain
instances violate due process.  This point was also addressed in the case of In re
Ramirez, 94 Cal.App.4th 594, at 571 (2001), when the Court noted that reliance on the
crime after 17 years in prison was arbitrary.  Petitioner has been incarcerated 17
years. While the proportionality aspects of the Ramirez decision were disapproved by
the California Supreme Court decision in In re Dannenberg, the entirety of Ramirez

1  decision, including this aspect, was not disapproved. Therfore, the Board's reliance

2  on the commitment offense violates due process. The predictive value of the crime

3  after 17 yearsof incarceration is zero.  Furthermore, in the case of In re Scott, 34

4  Cal.Rptr.3d 905 (Cal.App.1 Dist. 2005), the court clearly reaffirmed the rationale of

5  the Ramirez court when it declared ..."Parole is the rule rather than the exception"

6  ...  Thus, the California Board of Parole Hearings continuous use of the "some

7  evidence" standard as their proper standard of review is inappropriate, thus illegal.

8  Futhermore, reviewing Courts using the "some evidence" standard violates principles of

9  appellate review. Substantial evidence is the standard required for a reviewing Court.

10 **Consolidated** Edison Co. of New York v. NLRB, 305 U.S. 197 (1939). It is more than a

11 mere scintilla and means such relevant evidence as a reasonable mind might accept as

12 adequate to support a conclusion. Chrysler v. U.S. EnviromentProtection Agency, C.A.,

13 631 F.2d 865, 890. Under a proper analysis, the "substantial evidence" test, and not a

14 "some evidence" review is the appropriate standard.

15          ALL RELEVANT AND RELIABLE POST-CONVICTION EVIDENCE MUST BE GIVEN THE
           REQUIRED
16          CONSIDERATION IN FAVOR OF PETITIONER IN LIGHT OF THE EVIDENCE PRESENTED

17

18     Petitioner submits that the Board bases its reasons for petitioner's continued

19 incarceration on historical facts that can never change, thus ignoring the

20 contradicted evidence of petitioner's rehabilitation.  Petitioner has achieved the

21 very goal that is hailed by our judicial and correctional systems, coming to prison,

22 turning his life around and committing himself wholeheartedly to bettering himself and

23 the world around him.  Petitioner asserts there is **no evidence** that petitioner is

24 **currently** a threat to public safety. At petitioner's rehabilitation.  Petitioner

25 asserts he has taken every available step to improve his life, pay his debt to

26 society, and prepare himself for eventual release, as it is required under Penal Code

27 §3041 for eligible prisoners serving indeterminate sentences.  The Board's reliance on

28 the Commitment Offense as satisfying the "some evidence" standard of review is without

                                        16

1  merit, after removing the facts erroneously relied upon, relied exclusively upon the
2  Commitment Offense and failed to weigh and consider petitioner's remorse, positive
3  psychological profile, lack of future dangerousness, and both realistic and positive
4  parole plans including housing, education, and employment.  The Board is required to
5  consider all relevant information about a prisoner, not simply his commitment offense.
6  His "risk of danger to society is to be assessed in light of all relevant information
7  available to the panel. (Cal. Code Regs., tit. 15, §2402(b)).

8      Under the view of the California parole process, it is clear that the nature of
9  the commitment offense can constitute a basis for denial only to the extent it sheds
10 light on whether a prisoner "now poses a risk of danger to society". Relying on the
11 offense after years in custody and clear evidence of rehabilitation becomes arbitrary.
12 At some point along the parole consideration process, that excuse to refuse to set a
13 parole date enlight of exemplary conduct and behavior becomes arbitrary, and the term,
14 although initially valid, becomes dispropriate uniform term for the offense
15 approaches, the offense itself sheds less and less light on how a prisoner will behave
16 on the outside. His record in prison, his mental health, his conduct and achievements,
17 all shed more light on his readiness to rejoin society. (See **Deluna**, supra 2005 WL
18 268045, 6) a defendant's postcommitment institutional behavior is relevant to his
19 suitability for parole [citing §2402, subd. (d)(9)], and has both positive and
20 realistic parole plans (See In re Deluna, supra, 2005 WL 268045, 5- Stable
21 Relationships with others favor parole (15 CCR §2402 subd. (d)(9), All these factors
22 favor his release. There is no evidence petitioner now poses a risk of danger to
23 society.

24     The Board's reasons finding petitioner unsuitable is unreasonable and an abuse of
25 discretion enlight of the evidence presented to the board by petitioner and the
26 Department of Corrections and Rehabilitation Psychological Department and Counselor.

27     At the hearing, Correctional Counselor I, T. Verdesoto testified as to
28 petitioner's programming, and his future residence and employment when paroled:

17

**Therapy and self-help Activities:** Since Plaza's incarceration, he has participated in Alcoholics Anonymous, Inmate Education Advisory Committee, Bible Sudy, the Impact Program, Narcotics Anonymous, served as a Deacon, and was a member of the Protestant Choir.

**Postconviction Factors:** Plaza was received by CDC on 10/9/91 at Wasco RC and was transfered to CSP Folsom on 12/17/91 and was classified with Close A custody. On 2/22/92, Plaza was transferred to Calipatria where his custody was reduced to Close B. While in Calipatria, he worked in the culinary, pre-voc. and commputer programming. Plaza was again transfered to CSP-LAC on 2/3/94. He was classified there with Medium A custody. While at LAC, Plaza worked in the Drycleaning Voc., Electrical Voc. and Air Cond. Refrigeration/heating Vocation. On 12/16/97 he was transfered to Avenal where he was in Computer programming. On 3/13/98 he was transferred to CTF Soledad North where he was assigned to the Yard crew 4/7/98 to 4/28/98, and then to PIA Textiles. On 12/31/98 Plaza went to CMC East as a medical transfer and returned to CTF on 3/1/99 where he has remained housed. At his initial classification, Close B was established. Plaza's custody was reduced to Medium A on 3/23/00 and has remained at Medium A. While at CTF Central, Plaza has been assigned to Wing Porter Culinary, Dental Assistant and again Culinary, where he remains assigned.

**Disciplinary History:** Plaza has remained disciplinary free throughout his incarceration.

**Residence:** Plaza plans on living with his brother, Hector Plaza. phone number is (805) 581-6323

**Employment:** Plaza plans on working at Telair International 4175 Gardain street, Simi Valley, CA. 93063, phone number (805) 578-7303

**Assessment:** In review of Plaza'a parole plans, this counselor does not foresee any problems, however, it is recommended that Plaza updates his support letters prior to his hearing. (see Exhibit "B").

Dr. M. Macomber testified as to petitioner his current mental stability and his lack of present and future dangerousness:

**Psychiatric and Medical History:** There is no psychiatric history. There is no history of serious accidents or head injuries or seizures. His health is good.

**Current Mental Status/Treatment Needs:** Mr. Plaza related in a serious, sober and cooperative manner. Mental status was within normal limits. He was alert and well oriented. His thinking was rational, logical and coherent. His speech was normal, fluent and goal oriented. He does speak excellent English as well as Spanish. Affect was appropriate. There was no evidence of anxiety or depression. Eye contact was good. His memory was intact. His judgement was intact. His insight and self-awareness were good.

Mr. Plaza has spent a great deal of time in prison trying to improve himself. He surrently is attending Coastline Community College, working on his Associate of Arts Degree. His grades are very good. Also, he has obtained a certificte as a home Inspector from Professional Career Institute in Georgia by correspondence. In addition, he has completed

19

several courses toward self-improvement. He has completed a Prison fellowship Course in Parenting, Anger Management, another 12 week Anger Management class, Fathers Behind Bars Activity Group, Family Effectiveness Training and Harmony in the Home Anger Management course, Christian basics class, Teddy Bear Drive Benefiting Children in Crisis a Job Success course, Communicable Diseases, Impact Program focusing on the victim's rights, Christian Living course, Laubach Literacy Tutor Program, and the Salvation Army Bible Correspondence course.

**Current Diagnostic Impression:** Axis I-Drug and alcohol use by history; Axis II-No personality disorder; Axis III-No physical disorder; Axis IV-life term incarceration; Axis V-Current GAF: 95.

**Assessment of Dangerousness:** (A) In considering potential for dangerous behavior in the institution. Mr. Plaza has remained entirely disciplinary free. This is commendable. This is very difficult to do. At this time in prison, we are having frequent racial riots. It is very difficult for a hispanic male to disassociate himself from this activity, which can spontaneously occur in front of him, and if he doesn't get involved, he will receive retaliation. In this case, remaining disciplinary free is very difficult and commendable achievement. There is no evidence that he has ever been involved in riots, possession of weapons, assaults on others, or threats of any kind. As a result, it is evident that his potential for dangerou behavior in comparison to other inmates is definately below average.

Mr. Plaza has a chrono from Captain Guerra, in which it was stated that he had been hand picked to work as a communicator, working as a mediator

20

1    between the two groups in the institution that had been involved in a

2    riot against each other. Due to his ability to mediate between the

3    groups and to get them to agree to non violence towards each other, the

4    riot that occured at that time was resolved peacefully, and the result

5    was that the institution was able to unlock everybody and proceed with

6    the program.

7    (B) In considering potential for dangerous behavior in the community,

8    Mr. Plaza has no prior arrests for violence before the commitment

9    offense. He did receive an arrest as an adult in 1983 for spraying a one

10    inch diameter dot on the wall. He has remained disciplinary free in the

11    institution. In order to determine his risk level on parole, the Level

12    of Service inventory-Revised was adminsitered. This is an actual measure

13    that assesses criminal history, substance abuse history, current

14    adjustment, and other factors to determine current risk level. On this

15    measure he obtained a score of 3.6 cumulative frequency for prison

16    inmates. This means that if 100 men were released on parole , he would

17    do better on parole than 96 of them. This is a very low risk level. As a

18    result, he poses no more threat to society than the average citizen in

19    the community, and probably less threat to society at this point in his

20    life. (CO At the time of the offense, drugs and alcohol were a problem;

21    however, at this point in his life this no longer is an issue.

22    Therefore, there are no significant risk factors in this case.

23

24    **Clinician Observation/Comments/Reccomendations:** There are no mental or

25    emotional problems in this case that would interfere with routine parole

26    planning. Mr. Plaza has obtained vocational training in several areas.

27    He is currently working as a meat cutter in culinary. He has skills in

28    vocational dry cleaning, as well as in vocational air

21

1      conditioning/refrigeration and heating. He also has a job offer waiting

2      for him upon release. He has very strong family support in the

3      community. All these factors are good indicators of positive parole

4      success. He has maintained his marriage, and wife continues to be

5      supportive and involved in his life. He maintains constant contact with

6      his three children. Due to his study of the Bible and his commitment to

7      the christian way of life, He no longer has the irresponsible values and

8      lifestyle that he did prior to the commitment offense. All these factors

9      indicate that his prognosis for successful adjustment in the community

10     is excellent. (See Exhibit "C").

11

12     Petitioner asserts that the rehabilitative evidence submitted by petitioner and

13     both the Life Evaluation Report and Pyschological Report is supportive of release

14     contrary to the Board's specious findings. The Biggs Court addressed the Board's

15     illegal usage of needed therapy and other illegal reasons to justify a highly illegal

16     denial.

17

18     "The record in this case and the transcripts of Biggs hearing before the

19     Board clearly show that many conclusions and factors relied on by the

20     Board were devoid of evidentiary basis".

21

22     Petitioner submits that the record in this case is also devoid of evidentiary

23     basis as to the Board's findings that evidence presented is not supportive of release,

24     which violates due process. Petitioner further submits that despite the overwhelming

25     evidence that petitioner does not present a current risk to public safety. The Board

26     arbitrarily found petitioner unsuitable for release. Petitioner asserts that the real

27     reason given by the Board indicative of unsuitability is the commitment offense, and

28     if allowed to identify the unchanging circumstances as indicative of unsuitability,

22

1  this would put petitioner in an impossible situation, where no matter what he shows in
2  terms of positive behavior, reformation, self-help, work skills, parole plans, on just
3  rehabilitation in general, he would never be able to overcome the unchanging facts of
4  the crime. The only logical application of constitutional due dictates what the court
5  in Irons v. Warden, 358 F.supp.2d 936, 947, (E.D.Cal. 2005) held, i.e., that any
6  denial requires the presence of some in-prison behavior showing that the inmate
7  **currently** presents an unreasonable risk of danger if paroled.

8      Here the facts of the crime have been the only real reason for denying parole.
9  Yet, those facts have never been tied to **current** behavior showing that petitioner
10  still presents an unreasonable risk at this time. A rule requiring the presence of
11  in-prison adverse behavior to justify a denial based on the crime simply recognizes
12  what the 9th Circuit in Biggs alluded to when it talked of the rehabilitative goals of
13  the system., and the need to take into consideration that a person can rehabilitate
14  themselves. This seems to be missing from the Board's current agenda and policy. This
15  denies to petitioner the process to which he is constitutionally due.

16      At this point, petitioner has been incarcerated over 23 years (including pre-&
17  post-conviction credit). His programming clearly shows his full rehabilitation. In
18  drawing the line as to when a denial becomes arbitrary, that line has definitely been
19  crossed in this case, as the Board cannot present factual findings showing a continued
20  risk of danger based on the rehabilitative evidence presented. To the contrary, the
21  in-prison facts are exclusively positive.

22      As Ramirez noted (Ramirez, 94 Cal.App.4th at 594), the paroling authority must do
23  more than merely commend petitioner for the hard work done to rehabilitate himself
24  while in prison. They must actually consider these factors "as... circumstance[s]
25  tending to show his suitability for parole." Ramirez supra 94 Cal.App.4th at 571-72
26  [emphasis in original]. Of course, all the board did with petitioner's extensive
27  accomplishments was to brush them aside with several terse lines and issue superficial
28  compliments. Obviously, no serious consideration was ever given to petitioner's

23

1   outstanding programming. Yet, the Biggs rule is clear that if an inmate "continue[s]
2   to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole
3   date simply because of the nature of [his] offense and prior conduct would raise
4   serious questions involving his liberty interest in parole". Biggs v. Terhune, supra
5   334 F.3d at 916. Here, the evidence of actual rehabilitation is beyond dispute.

6       The Board's inability to find anything in his current programming, demeanor or
7   psychological condition to justify a finding of current dangerousness, the Board
8   continuously falls back on the immutable and unchanging facts, of the crime, to base
9   its findings of unsuitability.

10      Again as noted above, wherever one draws the line as to when the reliance on the
11  unchanging facts of the commitment offense becomes a violation of due process in the
12  abstract, under the facts here after 17 years, it clearly has passed here. Thus, the
13  Board must do more than simply commend petitioner for his efforts and accomplishments,
14  and must consider them as favoring parole in evaluating suitability. Ramirez, supra at
15  572. The Board must do this even if the factors of the commitment offense in the
16  abstract can be said to be sufficient to deny petitioner parole.

17      Petitioner asserts that he has continued to be a model inmate. Yet, continues to
18  be deprived the benefits of his exemplary rehabilitation by the California Board of
19  Parole Hearings. The only real issue at a parole hearing is whether the inmate
20  currently poses an unreasonable risk of danger to the public if paroled. This must be
21  determined by an inmates post-conviction evidence of rehabilitation. Petitioner has
22  met every prerequisited condition that warrants a finding of suitability. Because
23  there is no evidence to support a finding that petitioner poses a current threat to
24  public safety of any magnitude, let alone an unreasonable level of threat, the
25  decision denying parole can not be sustained.

26

27                              **CONCLUSION**

28      The Parole Board's decision was arbitrary and capricious. Petitioner did not

1  receive a fair hearing from the Board of Parole Hearings, nor will he ever.

2      The Court must order petitioner released or at the very least, direct the Board of

3  Parole Hearings to issue a decision within ten days granting petitioner parole,

4  setting his term as prescibed by the Legislature and the Statutes.

5      Based on the foregoing reasons and the entire file berein, petitioner submits that

6  the hearing was a sham and a farce in violation of the intent of the Legislature when

7  it enacted Penal Code §3041 et seq. 30 years ago.

8

9      I declare under penalty of perjury that the foregoing is true and correct to the

10  best of my knowledge. Executed this 18 day of February 2008, Correctional Training

11  Facility, Soledad, Ca.93960-0689.

12

13             Jesse Plaza petitioner In pro Per

14

15                  **PRAYER FOR RELIEF**

16

17  1.  Issue an Order to Show Cause on an expedited basis directing Respondent to

18     file a Return pursuant to Rule 4.551, California Rules of Court;

19  2.  Issue a Writ of Habeas Corpus;

20  3.  Order Respondent to provide petitioner with reasonable discovery;

21  4.  Conduct an Evidenciary Hearing;

22  5.  Declare the rights of the parties;

23  6.  Order injunctive relief;

24  7.  Appoint Counsel;

25  8.  Issue an order directing petitioner released on parole;

26  9.  Direct Respondent to release petitioner forthwith upon the granting of his

27     release on parole;

28  10.  Issue an Order directing petitioner released on his own recognizance or on

reasonable bail;

11.  Grant all other relief necessary to promote the ends of justice.


Dated:  3 - 16 - 08



                                        Respectfully submitted

                                        _Jesse M. Plaza_
                                         Jesse Plaza

                                            In Pro Per

PROOF OF SERVICE BY MAIL

I Jesse Plaza, declare that:

I am over 18 years of age, and I am the pro se petitioner to the attached cause of action. My complete mailing address is: Jesse Plaza, H-12371, P.O. Box 689  FW-338L, Soledad Ca. 93960-0689.

That I served a true and correct copy of the attached to the following partie(s), with postage fully prepaid and deposited in the prison (U.S. mail) box to:

OFFICE OF THE CLERK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

450 GOLDEN GATE AVE.

SAN FRANCISCO, CA. 94102

I decalre under penalty of perjury that the foregoing is true and correct, executed this _16TH_ day of _MARCH_, 2008 at Soledad, California.

_Jesse M. Plaza_
Jesse Plaza

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT 100**

| | |
|---|---|
| Date:         SEPTEMBER 6, 2007 | |
| Honorable: STEVEN R. VAN SICKLEN    Judge    JOSEPH M. PULIDO    Deputy Clerk | |
| NONE    Bailiff    NONE    Reporter | |

(Parties and Counsel checked if present)

| | |
|---|---|
| BH004502 | |
| In re, | |
| JESSE PLAZA,    Counsel for Petitioner: | |
| Petitioner, | |
| On Habeas Corpus    Counsel for Respondent: | |

Nature of Proceedings: ORDER RE: WRIT OF HABEAS CORPUS

The Court has read and considered the Petition for Writ of Habeas Corpus filed on February 23, 2007 by the Petitioner. Having independently reviewed the record, giving deference to the broad discretion of the Board of Parole Hearings ("Board") in parole matters, the Court concludes that the record contains "some evidence" to support the determination that the Petitioner presents an unreasonable risk of danger to society and is, therefore, not suitable for release on parole. See Cal. Code Reg. Tit. 15, §2402; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 667.

The Petitioner was received in the Department of Corrections on October 9, 1991 after a conviction for murder in the first degree with a firearm. He was sentenced to 25 years to life. His minimum parole eligibility date was January 25, 2007. The record reflects that on May 26, 1990, the Petitioner was driving with fellow gang members on a street known to be the territory of a rival gang. The Petitioner drove slowly, with the headlights turned off, as he approached the victim, a rival gang member, who was standing in front of a house. As the Petitioner drove by, his accomplice fired several shots at the victim. The victim was shot and killed. The Petitioner then sped away. A witness heard the gunshots and saw the Petitioner's car speed away called the police and the Petitioner and his accomplices were pulled over and arrested.

The Board found the Petitioner unsuitable for parole after his first parole consideration hearing held on August 29, 2006. The Petitioner was denied parole for two years. The Board concluded that the Petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board based its decision primarily upon his commitment offense.

The Court finds that there is some evidence to support the Board's finding that the Petitioner's offense was carried out in a calculated and dispassionate manner. Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(B). The Petitioner drove slowly with his headlights turned off, so as to avoid detection as he approached the victim. This demonstrates that the shooting was planned and that the Petitioner was deliberately driving toward the victim for that purpose. Additionally, the Petitioner's accomplice was armed with a gun for the purpose of shooting the victim. Regardless of whether the Petitioner himself shot the victim, he was acting in concert with his accomplice and, therefore, the shooting is imputed to him.

1

| Minutes Entered |
|---|
| 09-06-07 |
| County Clerk |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT 100**

| | | | | |
|---|---|---|---|---|
| Date: | SEPTEMBER 6, 2007 | | | |
| Honorable: | STEVEN R. VAN SICKLEN | Judge | JOSEPH M. PULIDO | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

(Parties and Counsel checked if present)

| | |
|---|---|
| BH004502 | |
| In re, | |
| JESSE PLAZA, | Counsel for Petitioner: |
|     Petitioner, | |
| On Habeas Corpus | Counsel for Respondent: |

     The Court also finds that there is some evidence to support the Board's finding that the Petitioner's motive was very trivial in relation to the offense. Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(B). The Petitioner and his accomplice shot the victim merely because he was a rival gang member. There is no evidence that the victim had threatened or harmed the Petitioner in any way. Gang rivalry is a very trivial motive for killing a man.

     Additionally, the Court finds that the Board did not err in denying the Petitioner parole for a period of two years. The Board must articulate reasons that justify a postponement, but those reasons need not be completely different from those justifying the denial of parole. See *In re Jackson* (1985) 39 Cal.3d 464, 479. The Board indicated that the Petitioner was denied parole for two years because his commitment offense was calculated and dispassionate and against a particularly vulnerable victim; his motive was trivial; and he failed to show adequate remorse for the victim. These reasons were sufficient to justify a two-year denial.

     Accordingly, the petition is denied.

     The court order is signed and filed this date. The clerk is directed to give notice.

     A true copy of this minute order is sent via U.S. Mail to the following parties:

Jesse Plaza
H-12371
Correctional Training Facility
P.O. Box 689
Soledad, California 93960-0689

Department of Justice- State of California
Office of the Attorney General
300 South Spring Street
Los Angeles, California 90013

2

| |
|---|
| Minutes Entered |
| 09-06-07 |
| County Clerk |

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES**<br>COURTHOUSE ADDRESS:<br>Clara Shortridge Foltz Criminal Justice Center<br>210 West Temple Street<br>Los Angeles, CA  90012 | Reserved for Clerk's File Stamp<br><br>**CONFORMED COPY**<br><br>SEP 0 7 2007<br><br>LOS ANGELES<br>SUPERIOR COURT<br><br>Joseph M. Pulido |
| PLAINTIFF/PETITIONER:<br><br>JESSE PLAZA | |
| **CLERK'S CERTIFICATE OF MAILING**<br>CCP, § 1013(a)<br>Cal. Rules of Court, rule 2(a)(1) | CASE NUMBER:<br><br>BH004502 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served:

☐ Order Extending Time          ☒ Order re: Writ of Habeas Corpus
☐ Order to Show Cause            ☐ Order
☐ Order for Informal Response      ☐ Order re:
☐ Order for Supplemental Pleading   ☐ Copy of Petition for Writ of Habeas Corpus for the
                                                Attorney General

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to the cause.  I served this document by placing true copies in envelopes addressed as shown below and then by sealing and placing them for collection; stamping or metering with first-class, prepaid postage; and mailing on the date stated below, in the United States mail at Los Angeles County, California, following standard court practices.

September 7, 2007
DATED AND DEPOSITED

JOHN A. CLARKE, Executive Officer/Clerk

By: _Joseph M. Pulido_ , Clerk
       Joseph M. Pulido

Jesse Plaza
H-12371
Correctional Training Facility
P.O. Box 689
Soledad, California 93960-0689

Department of Justice- State of California
Office of the Attorney General
300 South Spring Street
Los Angeles, California 90013

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JESSE PLAZA, | B202665 |
| On Habeas Corpus. | (Super. Ct. No. VA004108) |
| | **ORDER** |

THE COURT:

The court has read and considered the petition for writ of habeas corpus filed October 9, 2007. The petition is summarily denied.

COURT OF APPEAL - SECOND DIST.

**F I L E D**

NOV 8 - 2007

JOSEPH A. LANE _____ Clerk

L. GUZMAN _____ Deputy Clerk

_____          _____          _____
BOREN, P.J.                      ASHMANN-GERST, J.                 CHAVEZ, J.

Court of Appeal, Second Appellate District, Div. 2 - No. B202665
**S158421**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re JESSE PLAZA on Habeas Corpus

The petition for review is denied.

SUPREME COURT
FILED

JAN 2 3 2008

Frederick K. Ohlrich Clerk

Deputy

**GEORGE**

Chief Justice

5-17-08

COURT CLERK,

PLEASE STAMP A COPY
OF OVER SHEET FILED &
RECEIVED & MAIL BACK TO
ME. S.A.S.E. INCLUDED/PROVIDED

THANK YOU FOR
YOUR TIME & HELP.

J.M. Plaza

(Office of T...

(STATES DIS7...

JESSE M. PLAZA H.10371
P.O. BOX 689   2W-302
SOLEDAD, CA. 93960-0689

```
DUPLICATE

Court Name: U.S. District Court, NDCA
Division: 3
Receipt Number: 34611017300
Cashier ID: bucklem
Transaction Date: 03/24/2008
Payer Name: BILL LOCKYER
------------------------------------
WRIT OF HABEAS CORPUS
 For: jesse plaza
 Amount:        $5.00
------------------------------------
CHECK
 Check/Money Order Num: 203438458
 Amt Tendered:  $5.00
------------------------------------
Total Due:      $5.00
Total Tendered: $5.00
Change Amt:     $0.00

 c08-1589jf


 Checks and drafts are accepted
   subject to collections and full
     credit will only be given when the
 check or draft has been accepted by
 the financial institution on which
 it  was drawn.
```